## In re PAYNE.
### No. 19565.

District Court, D. Connecticut.
April 2, 1942.

Priest & Carson, of Forest Hills, L. I., N. Y., and David L. Daggett, of New Haven, Conn., for United Nat. Bank of Long Island, Petitioner.

William F. Curtin, of New Britain, Conn., for bankrupt.

HINCKS, District Judge.

The objecting creditor, a bank to which the bankrupt was indebted in the sum of $1,400, has brought into review the Referee's order granting a discharge.

The bankrupt's adjudication was entered on October 28, 1939. On March 30, 1938, the bankrupt gave the bank in writing what purported to be a full and true statement of his financial condition. The bank in its specifications of objection alleged that this statement was false and its present attack on the order of discharge is predicated on that contention.

On his financial statement the bankrupt listed as an asset a residential property in Long Island as having a value of $18,500, subject to a mortgage of $9,000. In fact, the record title of that property was in the bankrupt's wife. The bank's opposition to the discharge is predicated principally upon the contention that the Referee erred in accepting the bankrupt's explanation that this error as to record title was without fraudulent intent.

As to this, there was evidence from which the Referee might have found that the original purchase of the house some ten years before had been accomplished through a contract made by the bankrupt; that at all times thereafter the bankrupt had paid the taxes, insurance, water rents and electricity charges on the property; that in 1934 the bankrupt had arranged for the mortgage of $9,000 on the property which had been accomplished; and that the bankrupt at all times prior to the date of the statement had accepted and discharged the obligations of an owner in respect of the property and had generally treated it as his own.

On the other hand, there was a complete absence of evidence tending to show that the wife's record title to the proper-

ty had been used, either with or without the bankrupt's connivance, to defraud or hinder the bank, or indeed other creditors of the bankrupt. Instead, the evidence shows that some time after the date of the statement the wife who had long been ill had died whereupon the record title had passed to the bankrupt and that the mortgage thereon had been foreclosed. As a result the bank would have been no better off if the record title had indeed been in the bankrupt at the time of the statement. This fact of course does not excuse the error in the statement but the inference of fraud from the error is not as strong as it would have been if the wife's title had been used actually to obstruct the bankrupt's creditors. Moreover, even without this residential property, the statement would have shown that the bankrupt's net worth, apart from contingent liabilities, was about $13,000. The case therefore is not as strong against the bankrupt as it would have been if the residential property had constituted the only item in the statement, and especially so since the bankrupt disclosed on the statement that the assessed value of the property was $11,500, i. e., only $2,500 above the mortgage. Furthermore, in answer to the question "Are all taxes and interest and mortgages paid to date" the bankrupt answered "No." Obviously, a false answer to this question would have been less easy to detect than a misrepresentation as to the legal title and the absence of misrepresentation as to overdue taxes and interest somewhat militates against the inference of deliberate fraud in the error as to legal title.

■ Against this background I cannot say that the Referee, who observed the bankrupt on the witness stand, erred in giving credit to the bankrupt's explanation that he had so long dealt with the property as his own that he had come to believe he was the legal owner and truly intended that the bank should have all the right of an unsecured creditor in respect of this item. Granted that the burden of proof

was upon the bankrupt to explain his error, I cannot find that the Referee erred in finding that this burden had been sustained.

■ The other grounds of objection raised by the bank are less substantial. The bank complains that the bankrupt's liability on the Boschen note was erroneously listed as a contingent liability upon a note receivable. It should more accurately have been listed in the form used in a space below as a contingent liability as a co-maker or endorser for others, viz., the Payne Motor Co., Inc. But since it was specifically listed as a contingent liability, surely there is scant ground for an inference of fraud from an error in its precise classification, and especially so when the bankrupt frankly disclosed by another entry contingent liabilities of $35,000 as a guarantor for others on contracts.

■ Nor did the bankrupt's failure to list as a separate liability three months' rent upon his place of business require a finding of fraudulent intent. The bankrupt testified that at the date of the statement he did not consider this item as a liability. To be sure, this claim for rent was eventually reduced to judgment but the judgment was not obtained until some time after the date of the statement. Moreover, the record, although somewhat scanty, suggests that this was a business liability of the bankrupt incidental to a business which he had listed on the statement as having a net value of $15,000, possibly subject in whole or in part to the contingent liabilities referred to above of $35,000. If, as appears, the bank at the time the statement was made was content to have the bankrupt's interest in the business listed by a statement of these lump sums, there is no basis for imputing fraud to the bankrupt for failure to list the liabilities of the business, including accrued rent, item by item.

It is accordingly ordered that the petition in review be dismissed and that the discharge be confirmed.